

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Marianne Maria Viereckl,                      )
                                              )
                    Plaintiff,                )        No. 05 C 6292
          v.                                  )
                                              )        Hon. Mark Filip
Kenneth R. Ramsey, Kane County Sheriff,       )
in his official and individual capacities,    )
Sheriff Deputy Edward Pogorzielski,           )
Unknown Sheriff Deputy John Doe,              )
James P. Delaney, a Citizen and Process       )
Server, and M.P.S.I., Inc., his employer,     )
                                              )
                    Defendants.               )

## MEMORANDUM OPINION AND ORDER

Marianne Viereckl ("Plaintiff") has filed a two-count complaint against Kane County

Sheriff Kenneth R. Ramsey, Sheriff Deputy Edward Pogorzielski ("Deputy Pogorzielski" or

"Defendant"), a "John Doe" Sheriff Deputy, Process Server James P. Delaney, and Delaney's

employer, M.P.S.I., Inc. (D.E. 1.) Count I alleges civil rights violations under 42 U.S.C. § 1983

in connection with Plaintiff's arrest and overnight detention on or about May 12, 2004. (*Id.* ¶

60.) Count II appears to be a pendent state law claim for false arrest and imprisonment. (*Id.* ¶¶

2, 66.[1]) Plaintiff alleges that Deputy Pogorzielski arrested her without probable cause for

---

[1] Plaintiff's complaint, if read charitably to her, reflects a state law claim asserted under
the Court's pendent jurisdiction. The complaint (D.E. 1 ¶ 2) expressly invokes "28 U.S.C. §
1351," which is a statute that provides jurisdiction over "civil actions and proceedings against
counsels or vice counsels of foreign states; or members of a mission or members of their families
. . . ." This statute has no relevance to the instant case. Nonetheless, other portions of the
complaint make clear that Plaintiff's counsel is intending to refer, in substance if not by name, to
the supplemental jurisdictional statute for state law claims, 28 U.S.C. § 1367. The Court will
construe this ambiguity in Plaintiff's favor.

obstructing service of process and obstructing a peace officer. (*Id.* ¶¶ 44–56.) Plaintiff further alleges violations of due process and equal protection against Sheriff Ramsey, as a result of her overnight detention in the Kane County Jail. (*Id.* ¶¶ 53–54.)

This Court previously dismissed the claims against defendants Delaney and M.P.S.I., Inc. for Plaintiff's failure to comply with Fed. R. Civ. P. 4. (D.E. 18.) Before the Court are Deputy Pogorzielski's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (D.E. 20), and Plaintiff's motion to reconsider the court's dismissal of claims against Mr. Delaney and M.P.S.I., Inc. (D.E. 22). For the reasons discussed below, Deputy Pogorzielski's motion to dismiss is granted, such that the claims against him are dismissed without prejudice and with leave to replead if Plaintiff wishes to attempt to do so. Plaintiff's reconsideration motion is respectfully denied.

## FACTUAL ALLEGATIONS AND BACKGROUND REGARDING THE CLAIMS

The following factual allegations are taken from the complaint and are taken to be true, as precedent instructs, in the context of the pending motion to dismiss. The Court takes no position on whether the allegations are actually well-founded.

On May 12, 2004, Process Server Delaney arrived alone at the Vierockls' home to serve Josef Viereckl in a civil tax suit filed by the United States Attorney's Office against him. (D.E. 1 ¶ 7.) Josef Viereckl was not at home, so Plaintiff instructed Mr. Delaney to come back the next day after 6 p.m (*id.* ¶ 8), and Mr. Delaney left (*id.* ¶ 10). He returned within the hour with Sheriff's Deputy Pogorzielski to effect substitute service on Plaintiff (*id.* ¶¶ 11–12). When the process server returned with Sheriff's Deputy Pogorzielski, the sheriff's deputy shined a flashlight in Plaintiff's eyes and refused to give her his name. (*Id.* ¶ 13.) The sheriff's deputy and process server demanded Plaintiff's first name (*id.* ¶ 14), and Plaintiff refused to state her

2

first name for the Sheriff's Deputy Pogorzielski, identifying herself only as "Mrs. Josef Viereckl." (*Id.* ¶ 17.) She also tried to close the door in his face. (*Id.* ¶ 16.)

After Plaintiff attempted to close the door in Deputy Pogorzielski's face, he "put his foot in the door and drageed (sic) Plaintiff out on the front porch." (*Id.*) Plaintiff continued her refusal to state her first name, and Deputy Pogorzielski arrested her for obstructing service of process and obstructing a peace officer. (*Id.* ¶ 17.)

Plaintiff was handcuffed and taken to the Kane County Jail (*id.* ¶ 21), where she was held overnight; she was not allowed to post bail until the following day (*id.* ¶ 37). Plaintiff was not allowed to use a private toilet by a John Doe Deputy until after the bond hearing; nor was she allowed to make a phone call or given pen and paper while she was held. (*Id.* ¶¶ 41–42.) The state criminal charges against Plaintiff were eventually dropped in the Kane County Circuit Court. (*Id.* ¶ 47.)

According to the complaint, "exactly one year after these incidents, Plaintiff filed a small claim action in the Kane County Circuit Court." (*Id.* ¶ 58.) That suit was subsequently dismissed voluntarily. (*Id.*) Plaintiff filed this federal lawsuit on November 5, 2005. (D.E. 1.)

## STANDARD OF REVIEW

When ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and make all reasonable inferences in the plaintiff's favor. *See Northwest Tissue Ctr. v. Shalala*, 1 F.3d 522, 527 (7th Cir. 1993) (citing *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991)). A court should only dismiss the plaintiff's complaint under Rule 12(b)(6) if there is no set of facts under which the court may grant the plaintiff relief. *See Northwest Tissue Ctr.*, 1 F.3d at 527.

The appropriate scope for a reconsideration motion is a limited one. *See, e.g., Holden v. Deloitte and Touche LLP*, 390 F. Supp. 2d 752, 757 (N.D. Ill. 2005). Precedent instructs that a motion to reconsider is appropriate only when the court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990)) (internal quotation marks and citation omitted).

## DISCUSSION

### I.    Defendant's Motion to Dismiss

To state a cognizable § 1983 claim, a plaintiff must allege that (1) a person acting under color of state law engaged in conduct that (2) deprived him of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *accord, e.g., Starnes v. Capital Cities Media, Inc.*, 39 F.3d 1394, 1396 (7th Cir. 1994). Plaintiff's complaint asserts two theories of recovery: (1) false arrest and (2) illegal detention. This opinion addresses only the false arrest claim, because that is the only claim against the movant, Deputy Sheriff Pogorzielski.[2] (D.E. 1 ¶ 4.) Plaintiff's claim fails because there was probable cause for her arrest. Moreover, and independently, even if Deputy Pogorzielski lacked probable cause (and the answer to that question is not pellucid, although it appears reasonably clear that he did have probable cause), he has qualified immunity from suit under applicable legal principles.

---

[2] As discussed in greater detail in Part II of this opinion, the claims against Delaney and M.P.S.I. were dismissed on April 18, 2006, for failure of Plaintiff to comply with Fed. R. Civ. P. 4. Defendants Ramsey, Pogorzielski, and Doe's motion to dismiss was deemed filed on May 23, 2006, but as of this opinion, the Court has not received memoranda in support of Sheriff Ramsey's motion to dismiss, or any memorandum on behalf of the putative John Doe defendant. Accordingly, any request to dismiss the suit as against Ramsey or Doe is denied without prejudice.

4

## A. General Analytical Principles in the Qualified Immunity Setting

Precedent teaches that "[p]olice officers are entitled to qualified immunity for actions taken during a stop or arrest insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001) (internal quotation marks and citation omitted). In determining whether an officer is entitled to qualified immunity, "the first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *accord, e.g., Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003). If no constitutional right has been violated, that is the end of the qualified immunity analysis. *See Saucier*, 533 U.S. at 201.

If a violation could be made out on the facts taken in the light most favorable to the plaintiff, the next step "is to ask whether the right was clearly established"—that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201–02 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Moreover, "[o]nce a defendant has pleaded qualified immunity, the plaintiff has the burden to demonstrate the existence of the clearly established constitutional right." *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1174 (7th Cir.1997) (citation omitted).

Precedent teaches that it is "vital" that "[t]his inquiry . . . must be undertaken in light of the specific context of the case." *Saucier*, 533 U.S. at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Id.* (internal quotation marks and citation omitted). Precedent also makes clear that "the doctrine of qualified immunity leaves 'ample room for mistaken judgments' by police officers." *Payne*, 337 F.3d at 776 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)); *accord, e.g., Anderson v.*

5

*Creighton*, 483 U.S. 635, 341 (1987) ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.") (citing *Malley*, 475 U.S. at 344–45); *Malley*, 475 U.S. at 341 ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

## B. Probable Cause

### 1. Federal Principles at Play

Precedent teaches that the existence of probable cause to arrest presents an absolute bar to a Section 1983 claim based on a false arrest theory. *See, e.g., Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) ("An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause.") (citing *Jones by Jones v. Webb*, 45 F.3d 178, 181 (7th Cir. 1995)). As the Supreme Court has explained in reviewing its probable cause jurisprudence, "[o]n many occasions, we have reiterated that the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent . . . [people], not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (various citations and internal quotation marks omitted); *see also United States v. Muhammad*, 120 F.3d 688, 696 (7th Cir. 1997) ("This 'flexible, commonsense' probable cause standard rests on whether a 'man of reasonable caution' would believe that the accused has committed a crime; it does not require that this 'belief be correct or more likely true than false.'") (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). The fact that Plaintiff ultimately was not convicted has "no bearing on whether there was probable cause for . . . [her] arrest. *Sagat v.*

*Gramza* No. 98 C 2507, 1999 WL 14499, *6 (N.D. Ill. Jan. 8, 1999) (citing *Kelley*, 149 F.3d at 647).

The question of whether there was probable cause in the instant case is one that largely turns on an interpretation and application of the Illinois criminal code. The answer to that interpretive inquiry is at least relatively clear, and, as explained, leads the Court to conclude that probable cause was present under Illinois law. Nonetheless, candor compels the concession that the answers to the state law issues are not pellucid, as there is no Illinois case directly on point. This lack of absolute clarity, however, is not material to the bottom-line result concerning Deputy Sheriff Pogorzielski's motion to dismiss, because the potential ambiguity serves to underscore why qualified immunity is appropriate, irrespective of how the Illinois issues ultimately are resolved by the Illinois courts in an appropriate case.

In such a circumstance, one might be tempted to avoid what is essentially an unnecessary endeavor by a federal court to (attempt to) explicate Illinois's criminal code and to interpret and apply its state law precedents. *Saucier* appears to require this threshold analysis in the qualified immunity context, however, irrespective of whatever considerations might counsel otherwise. *See Saucier*, 533 U.S. at 200 ("[T]he requisites of a qualified immunity defense must be considered in proper sequence."); *accord Brosseau v. Haugen*, 543 U.S. 194, 598 (2004) (per curiam) ("[W]hen confronted with a claim of qualified immunity, a court must first ask the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'") (quoting *Saucier*, 533 U.S. at 201).

To be sure, there is a substantial body of jurisprudence criticizing this seemingly inflexible mandate to first assess the constitutional question and related issues and only then

proceed to the question of whether any putative unlawfulness was clearly established in applicable precedent, such that qualified immunity does not adhere. *See, e.g.*, *Brosseau*, 543 U.S. at 600–01 (Breyer, J., joined by Scalia, J., and Ginsburg, J., concurring) (stating that the Supreme Court should reconsider "the current rule," which can sometimes "require[] courts unnecessarily to decide difficult constitutional questions when there is available an easier basis for the decision (*e.g.*, qualified immunity) that will satisfactorily resolve the case before the court"); *Bunting v. Mellen*, 541 U.S. 1019, 124 S.Ct. 1750, 1751 (2004) (Stevens, J., joined by Ginsburg and Breyer, JJ., respecting the denial of certiorari) (criticizing the "unwise judge-made rule under which courts must decide whether the plaintiff has alleged a constitutional violation before addressing the question whether the defendant state actor is entitled to qualified immunity"). There also is a meaningful body of federal appellate precedent—much from before the Supreme Court's opinions in *Bunting* and *Brosseau*—which held or strongly suggested that the *Saucier* sequential analysis was more of a preference than a requirement, such that a lower court could proceed simply to the qualified immunity/clearly established question in an appropriate case. *See, e.g.*, *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 55–60 (2d Cir. 2003) (Calabresi, J.); *Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001) (Posner, J.) (collecting cases and expressing doubt that the *Saucier* rule is "absolute"); *Kalka v. Hawk*, 215 F.3d 90, 96 (D.C. Cir. 2000) (Randolph, J.) (assuming a putative constitutional violation *arguendo* and explaining why qualified immunity nonetheless applied); *Horne v. Coughlin*, 191 F.3d 244, 248 (2d Cir. 1999) (Leval, J.) (explaining considerations that would typically dictate against an unnecessary resolution of a constitutional issue in this context). In addition, some appellate courts have even gone so far as to put aside the *Saucier* ordering in the context of a qualified immunity question. *See Motley v. Parks*, 432 F.3d 1072, 1078 (9th Cir. 2005) (en banc) (stating

8

that it was unnecessary to resolve the threshold question of constitutionality *vel non* of disputed

police actions because the Supreme Court had granted certiorari on the issue, and instead

proceeding directly to the related qualified immunity/clearly established question); *Vives v. City*

*of New York*, 405 F.3d 115, 118–19 (2d Cir. 2005) (electing to proceed directly to the qualified

immunity/clearly established analysis); *Carswell v. Borough of Homestead*, 381 F.3d 235, 241

(3d Cir. 2004) (declining to engage in the first-prong of the *Saucier* analysis because of "serious

doubts" about the admissibility of certain evidence that would be needed to support a finding of a

constitutional violation and instead proceeding directly to the qualified immunity/clearly

established issue while only assuming *arguendo* that a constitutional violation could be shown in

the case).

 Were this Court persuaded that there is flexibility to simply assume a constitutional

violation *arguendo* in this case, and to proceed straight to the qualified immunity/clearly

established analysis, the Court would almost surely do so. The threshold questions concerning

the Illinois criminal code involve areas of state law that are at least somewhat undeveloped in

Illinois caselaw; concomitantly, the questions about Illinois law at issue have seldom been of

interest or material consequence in the Illinois courts, so it seems particularly inappropriate to

opine about them unnecessarily. In this regard, *Saucier* explained that its mandate to resolve the

issue of whether a constitutional violation occurred first was necessary to ensure that the

refinement and illumination of important constitutional concepts is not frustrated. *See id.*, 533

U.S. at 207. That principle would not seem to mandate that federal courts unnecessarily opine

about the meaning of a relatively obscure state criminal statute—here, for example, concerning

issues relating to the misdemeanor Illinois offense of obstructing the service of legal

process—when such speculation is not necessary to fairly resolve the federal case. *Accord*, e.g.,

*Ehrlich*, 348 F.3d at 58. That dynamic is underscored by the fact that this Court's statements about the meaning of the Illinois statute—indeed, even unanimous pronouncements about the meaning of the Illinois statute by higher federal appellate courts—would have no precedential effect vis-à-vis the Illinois courts, which have not been shy about rejecting federal interpretations of state statutes in at least some other instances. *See, e.g., Hartford Accident and Indemnity Co. v. Rush-Presbyterian-St. Luke's Medical Center*, 595 N.E.2d 1311, 1317 (Ill. App. Ct. 1992) ("[W]e disagree with the conclusion of the Seventh Circuit Court of Appeals and do not believe their interpretation . . . conforms to Illinois law."); *see also Ehrlich*, 348 F.3d at 58 (noting that "state courts would later be completely free to give the relevant [state] law a different reading, [and therefore] our decision would not meaningfully settle the issue of whether a federal right was violated in the circumstances").

Nonetheless, the Court finds it difficult to see how it can, consistent with the Supreme Court's directives in *Saucier*, as underscored again in *Brosseau*, elide past the threshold issue of whether a false arrest occurred, which issue is interlaced with questions about the meaning of the Illinois statutes. *Accord Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005) (Sutton, J.) ("[W]e follow the two-step inquiry that *Saucier* required, *see* 533 U.S. at 201, and that *Brosseau* did not alter, *see* 125 S.Ct. at 598 & n.3."); *see also id.*, 417 F.3d at 580 (Sutton, J., joined by Gibbons, J., concurring) ("While I see virtue in telling lower courts that they should generally answer the constitutional question before the clearly established [qualified immunity] question, I wonder whether it makes sense to mandate that they do so in all cases, no matter the costs, no matter the ease with which the second question [under *Saucier*] might be answered."). As a result, the Court will proceed sequentially through the two-step Saucier analysis, even though the

answer to the first-step of the analysis is not necessary to the resolution of the case, given the answer to the step-two "clearly established" question.

## 2. State Law Principles Affecting the Probable Cause Assessment

In this case, the threshold question is whether a reasonable officer would have believed that Plaintiff had obstructed service of process or obstructed a peace officer. The Illinois Obstruction of Service of Process Statute states: "Whoever knowingly resists or obstructs the authorized service or execution of any civil or criminal process or order of any court commits a Class B misdemeanor." 720 ILCS 5/31-3 (West 2006); *see also People v. Meister*, 682 N.E.2d 306, 308 (Ill. App. Ct. 1997). Obstructing a peace officer is a separate offense under 720 ILCS 5/31-1, and it provides, in relevant part: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2006); *see also Meister*, 682 N.E.2d at 308.

The Illinois appellate courts have held that, in the context of obstructing a peace officer, the terms "resistance" and "obstruct" "do not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." *Meister*, 682 N.E.2d at 308 (internal quotation marks and citations omitted); *see also People v. Synnott*, 811 N.E.2d 236, 241 (Ill. App. Ct. 2004) (holding that a physical act is not necessary for obstructing a peace officer where a defendant repeatedly refused to get out of his car because "any behavior that actually threatens an officer's safety or even

11

places an officer in fear for his or her safety is a significant impediment to the officer's performance of his or her duties").

*Meister* further explained that the Illinois obstruction-of-service-of-process statute does not require a physical act or struggle. In this regard, *Meister* teaches that "a non-physical act, [such as] the provision of false information, is sufficient to 'obstruct' justice or, in other words, 'to be or come in the way of' justice." *Id.*, 682 N.E.2d at 309. Moreover, *Meister* held that, under Illinois law, "[i]n determining whether there has been an obstruction of service of process, the proper focus is not upon whether actual delay occurred but, rather, on whether defendant created an obstacle that *may* result in a delay." *Id.* (emphasis in original). *Meister* relied heavily on *Migliore v. Winnebago County*, 321 N.E.2d 476 (Ill. App. Ct. 1974), where the Illinois appellate court held that the plaintiff was properly arrested for obstructing service of process when he refused to state his name for the defendant police officers who were attempting to serve him with a subpoena. *See id.*, 321 N.E.2d at 478–79; *see also Meister*, 682 N.E.2d at 310 ("[T]he proper service of process depends upon the identity and location of the individual."). The appellate court in *Migliore* explained that the officers had a legal duty to serve the subpoena—which included the duty to ensure that it was served on the right person—and the plaintiff therefore had a concomitant duty to comply with their request to state his name. *Id.*, 321 N.E.2d at 478–79. Failing to do so constituted obstruction of service because it hindered the officers in their duty. *Id.* As the *Migliore* court stated, in discussing Illinois law:

A citizen . . . has legal duties: not to knowingly resist or obstruct a police officer in the performance of any authorized act (Ill. Rev. Stat.1971, ch. 38, s. 31-1); and not to knowingly resist or obstruct the authorized service of any civil process (Ill. Rev. Stat. 1971, ch. 38, s. 31-3). [. . . .]

. . . [W]e are of the opinion that at the time defendants [two deputy sheriffs] attempted to serve the subpoena upon plaintiff, they were acting under a legal, authorized duty.

12

> Performance of this duty included a determination that the person to be served was in fact Nick Migliore. The determination was necessary for two reasons: to establish that plaintiff had actual knowledge of the subpoena and to make possible a proper return as commanded by the court. We therefore hold that plaintiff, upon being informed of the nature of defendants' business, was under a legal duty to comply with defendants' request by giving his name.

*Id.*, 321 N.E.2d at 479.

Subsequent Illinois caselaw has underscored this teaching. Thus, *Synnott* stated that, "a person named in a civil subpoena is obligated to identify himself to an officer attempting to serve the subpoena and can be prosecuted for obstruction if he fails to do so." *Id.*, 811 N.E.2d at 239 (citing *Migliore*, 321 N.E.2d at 479).

Under the circumstances, it seems clear that Deputy Pogorzielski had probable cause to arrest Ms. Viereckl—at a minimum for obstructing the service of process. Plaintiff concedes that Deputy Pogorzielski expressly "requested her full name" and requested her "first name" when he returned with the process server, who previously made clear that he was attempting to serve legal process in connection with a federal tax case against Plaintiff's husband. (D.E. 1 ¶ 1; *see also, e.g., id.* ¶ 8 (Plaintiff conceding that she understood legal process was being attempted as against her husband); *id.* ¶ 14 (reflecting that Plaintiff understood that "they" [*i.e.*, the deputy sheriff and process server] were "now demanding her first name"); *id.* ¶ 16 (stating that, instead of providing her first name, Plaintiff "closed, or tried to close the door in the face of the deputy"). Plaintiff also concedes that, prior to attempting to close the door, she did not provide her first or full name, but instead only would state that she was "Mrs. Josef Viereckl." (*Id.* ¶ 17.)

As previously stated, these acts, as alleged and/or acknowledged by Plaintiff, appear to constitute probable cause so as to justify an arrest for the misdemeanor offense of obstruction of

the service of process.[3]  Although Plaintiff was not the person named in the subpoena, Defendant and the Process Server needed to determine who she was in order to determine whether they could properly effect substitute service on her.  Again, it was reasonable for Deputy Pogorzielski to believe that obtaining Plaintiff's full name was required to securely effect substitute service and, therefore, that her failure to provide her full name, including her first name, constituted a violation of the obstruction statute.

Plaintiff does not attempt to meaningfully engage the authorities cited by the deputy sheriff in support of his contention that there was probable cause for the arrest, such that it was proper under Illinois law.  Plaintiff appears to suggest that there is some sort of materiality component to an obstruction-of-service-of-process offense under Illinois law, such that her refusal to give her first name was not actionable because "[m]erely stating to the Sheriff's Deputy that she was Mrs. Josef Viereckl and refusing to give her first name did not *actually* obstruct the process server." (D.E. 1 ¶ 29 (emphasis added).)  Plaintiff cites no authority in support of this suggestion about Illinois law.  As explained, Illinois precedent rejects the idea that obstruction of the service of process requires actual or material deleterious effect on the service-of-process effort.  Specifically, *Meister* squarely held that, under Illinois law, "[i]n determining whether there has been an obstruction of service of process, the proper focus is not upon whether actual delay occurred but, rather, on whether defendant created an obstacle that

_____

[3] Although portions of Defendant's brief also allude to actions that Plaintiff took before the deputy sheriff arrived—actions that (in the Defendant's view at least) were thereafter accurately documented in the signed complaint—all of the actions described above were witnessed by the deputy sheriff. Defendant Deputy Sheriff Pogorzielski may be correct that the allegations in the signed complaint provide further justification for the arrest. However, the actions in the presence of the deputy sheriff provided probable cause for the arrest; they also, even more clearly, justify a dismissal on the basis of qualified immunity, as discussed at greater length in Section I.B., *infra*.

14

*may* result in a delay." *Id.*, 682 N.E.2d at 309 (emphasis in original). Refusing to provide one's first name would appear to fit within this relatively capacious formulation.[4] This conclusion is underscored by the fact that Illinois law takes a strict view of its substitute service statute (as both Plaintiff and Defendant agree—*see* D.E. 21 at 5–6, D.E. 28 at 2), such that the "the presumption of validity that attaches to a return reciting personal service does not apply to a return reciting substitute service." *Dec and Aque v. Manning*, 618 N.E.2d 367, 372 (Ill. App. Ct. 1993) (citing *State Bank of Lake Zurich v. Thill*, 497 N.E.2d 1156, 1162 (Ill. 1986)). Thus, the return of a person making service of process by delivering a copy to another person must show "strict compliance with every requirement" of the substitute service regime. *Dec and Aque*, 618 N.E.2d at 372 (citing *Thill*, 497 N.E.2d at 1162).

   Plaintiff also appears to suggest that the deputy sheriff could have taken less restrictive steps and still likely gotten the subpoena served—for example, Plaintiff suggests that "[t]he sheriff's deputy could have stood by and listened to the process server try to get Mrs. Josef

_____

   [4] Similarly, Plaintiff asserts, for example, that a return of service of process that included a physical description and the name, Mrs. Josef Viereckl, "would have withstood any motion to quash service" that Josef Viereckl could have filed. (D.E. 1 ¶ 28; *see also* D.E. 28 at 2 (Plaintiff arguing that, a listing of her "age, height, weight and appearance, as well as her claim to be his wife, would be more than adequate" to effect substitute service); *id.* at 3 (Plaintiff claiming that, "[s]hould Jozef [sic] have attacked the sufficiency of the substitute service, he would have had to produce a marriage certificate showing that Maria is not the apparent age asserted by the process server, and would have had to produce a passport or ID for this other person that would show that Maria was not the wife she purported to be.").)

   These assertions are not persuasive. Again, *People v. Meister*, 682 N.E.2d 306 (Ill. App. Ct. 1997), expressly rejects the idea of an actual-prejudice requirement under Illinois law in favor of a more expansive potential-cause-of-delay requirement. Refusal to provide one's first name, in response to a conceded request to do so, would appear to fit within this more generous definition that the Illinois Court of Appeals traced in *Meister. Accord People v. Synnott*, 811 N.E.2d 236, 239 (Ill. App. Ct. 2004) (teaching that "a person named in a civil subpoena is obligated to identify himself to an officer attempting to serve the subpoena and can be prosecuted for obstruction if he fails to do so") (citing *Migliore v. Winnebago County*, 321 N.E.2d 476, 479 (Ill. App. Ct. 1974)).

Viereckl to state her full name but that did not happen either." (D.E. 1 ¶ 33.) Again, Plaintiff offers no authority in support of the idea that this principle matters. Police officers often have the ability to disregard a misdemeanor offense and see if the situation can be depressurized in some other manner. (For example, law enforcement officers often disregard minor bumps, pushes, or shoves that might attend a confrontation with a suspect or citizen.) Nonetheless, an officer's decision to effect an otherwise lawful arrest based on probable cause is not rendered illicit simply because the officer did not pursue a wait-and-see approach.

In the interests of completeness, the Court notes that an argument could have been made (although Plaintiff did not offer it, at least in any meaningful detail) that there is no case directly holding under Illinois law that a refusal to give one's first name in response to a specific directive from a law enforcement officer to do so constitutes obstruction of the service of process. Put differently, although the general principles noted above suggest that the arrest at issue was proper under Illinois law, the deputy sheriff can point to no Illinois authority saying exactly that in a context directly analogous to the case at hand. Nonetheless, although this potential ambiguity would have prompted the Court to obviate the discussion of the propriety *vel non* of the arrest under Illinois law if *Saucier* allowed such flexibility, that same potential ambiguity is not material to the bottom-line result here because it simply underscores the propriety of a qualified immunity dismissal, as explained at length below. *See, e.g., Kernats v. O'Sullivan*, 35 F.3d 1171, 1176–77 (7th Cir. 1994) (collecting cases and teaching that police officers are not required to be legal prognosticators, and that where ambiguity in the law exists, qualified immunity protects law enforcement officers from damages liability).

## C. Qualified Immunity

Even if Plaintiff's claim for false arrest were not otherwise barred, it would fail because Defendant has qualified immunity. As stated, precedent establishes that when a defendant asserts qualified immunity, the burden is on the plaintiff to show why the defense fails. *See, e.g., Estate of Stevens*, 105 F.3d at 1174 ("Once a defendant has pleaded qualified immunity, the plaintiff has the burden to demonstrate the existence of the clearly established constitutional right.") (citation omitted). As also stated, because of the nature of qualified immunity review, "the doctrine of qualified immunity leaves 'ample room for mistaken judgments' by police officers." *Payne*, 337 F.3d at 776 (quoting *Malley*, 475 U.S. at 343); *accord, e.g., Malley*, 475 U.S. at 341 (teaching that the qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law"). Under the analytical metric established by the caselaw, a court must "ask whether the right was clearly established"—that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201. This analysis cannot be taken at an abstract, meta-level of generality, but rather "must be undertaken in light of the specific context of the case" at issue. *Id.*

Plaintiff's brief, with all respect, does not meaningfully engage the authorities cited by the Defendant deputy sheriff in his motion to dismiss. This shortcoming was less significant when assessing whether Illinois precedent suggested that an unlawful arrest had occurred, but it is more significant in assessing whether the Plaintiff has discharged her burden of showing that the putative unlawfulness of the arrest was "clearly established." *Saucier*, 533 U.S. at 201. In this regard, Plaintiff offers no cases, at any meaningful level of specificity, suggesting that an unlawful arrest occurred under the parameters of the Illinois criminal code, much less that the putative unlawfulness of the arrest that occurred was "clearly established" in Illinois law. *Id.*

Plaintiff offers only three authorities on the question of qualified immunity. (*See* D.E. 28 at 4–5.) They do not aid Plaintiff's cause. For example, *Hansen v. Cannon*, 122 Fed. Appx. 265, 2004 WL 2829016 (7th Cir. Nov. 2, 2004), is an unpublished decision of the Seventh Circuit. As such (and as expressly reflected on the printed version of the case), under Seventh Circuit Rule 53, the case should not be used, except for limited purposes not relevant here, by a district court in the Seventh Circuit "for any purpose." Seventh Circuit Rule 53(b)(2)(iv). Seventh Circuit Rule 53 further underscores that an unpublished decision such as *Hansen* "shall not be cited or used as precedent" in this district court. *Id.*

The second case, *Kijonka v. Seitzinger*, 363 F.3d 645 (7th Cir. 2004), also is of no assistance to Plaintiff. The case deals with an arrest for the offense of assault, which is not at issue here, and the assault arrest was improper under settled principles of Illinois law, which were consistent with more general principles of law that were well-defined and uniform "[e]ver since the fourteenth century." *Id.*, 363 F.3d at 647. The decision further added that there was no authority even suggesting that the assault arrest at issue was lawful under Illinois jurisprudence. *Id.* at 648. Here, by way of contrast, Plaintiff has not offered a single case suggesting that the arrest for obstruction of service of process was unlawful under Illinois law, much less that such a conclusion is a settled matter under Illinois law.

The third case, *Overstreet v. Myers*, 75 F. Supp. 2d 858 (N.D. Ill. 1999), also is not germane. It is a case about an underlying arrest under Illinois law for disorderly conduct, *id.* at 859–60, again an offense that is not even at issue in this case.

Finally, in this regard, Plaintiff suggests that she should be able to proceed through discovery and that the deputy sheriff should raise his qualified immunity argument later in the context of summary judgment. (D.E. 28 at 6.) With all respect, this argument is not consistent

with precedent. Although a defendant can raise a qualified immunity defense at the summary judgment stage, a defendant also certainly can raise the defense in the context of a motion to dismiss. In fact, the Supreme Court has repeatedly and pointedly underscored that its foundational precedents such as "*Harlow* [*v. Fitzgerald*, 457 U.S. 800 (1982)] and *Mitchell* [*v. Forsyth*, 472 U.S. 511 (1985)], make clear that the defense [of qualified immunity] is meant to give government officials a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such *pretrial* matters as discovery, . . . as "[i]nquiries of this kind can be particularly disruptive.""" *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (quoting *Mitchell*, 472 U.S. at 526 (in turn quoting *Harlow*, 457 U.S. at 817)) (emphasis in *Behrens*).

Plaintiff has made no meaningful attempt to establish that a wrongful arrest occurred with reference to the parameters of the underlying Illinois criminal statutes. Furthermore, and independently, Plaintiff has made no meaningful attempt to establish that the supposed wrongfulness of the arrest was clearly established under Illinois law. This is not the sort of presentation that warrants the allowance of discovery under well-settled Supreme Court teaching discussed immediately above. Although the Court will indulge Plaintiff by dismissing the claims against Deputy Sheriff Pogorzielski without prejudice—to see if Plaintiff wants to attempt to replead the claims—Plaintiff has failed to discharge her burden of showing that qualified immunity does not adhere. Based on the arguments presented by Plaintiff and allegations she advances, a reasonable officer could have believed that Plaintiff had committed the offense of obstructing service of process.[5] Therefore Deputy Pogorzielski was not acting

---

[5] There also likely was probable cause for arrest for the offense of obstruction of a peace officer. Given the conclusion that qualified immunity adheres under the obstruction-of-service-of-process statute, the Court need not explore this further, independent basis that would validate the arrest.

contrary to clearly established law when he arrested Plaintiff, and he is entitled to qualified immunity. As a result, Deputy Pogorzielski's decision to arrest Plaintiff "'falls within the zone of probable cause [ ]and even more easily into the zone of qualified immunity[ ].'" *Kelley*, 149 F.3d at 648 (quoting *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247–48 (7th Cir. 1994)).

## D.   Pendent State Law Claim for False Arrest and Imprisonment

As with Plaintiff's federal claim, the existence of probable cause similarly precludes her state law claims for false arrest and imprisonment. *See Taylor v. Bush*, No. 04 C 3396, 2006 WL 862855, at *3 (N.D. Ill. March 30, 2006) ("'[T]he existence of probable cause [also] precludes the common law actions of false arrest and imprisonment and malicious prosecution.'") (quoting *Carlson v. Bell*, No. 04 C 8201, 2005 WL 3116051, at *3 (N.D. Ill. Nov. 22, 2005)); *accord Johnson v. Target Stores*, 791 N.E.2d 1206, 1220 (Ill. App. Ct. 2003).[6] Moreover, as a police officer enforcing the law, Pogorzielski has immunity from tort suits under the Local Government and Governmental Employees Tort Immunity Act, unless Plaintiff can demonstrate that his conduct was "willful and wanton." 745 ILCS 10/2-202; *accord, e.g., Jones v. Village of Villa Park*, 784 F. Supp. 533, 535–36 (N.D. Ill. 1992). The existence of probable cause for the arrest precludes such a conclusion. *See Migliore*, 321 N.E.2d at 479. Moreover, and independently, given the existence of Illinois authorities such as *Migliore*—which if nothing else strongly indicate that the deputy sheriff's actions were well-founded under Illinois law, even without regard to any heightened protections for police officers against damages suits such

---

[6] Plaintiff's false imprisonment claim, if read charitably, also appears to suggest that she should have received bond sooner than she did. This putative aspect of her claim, however, does not, as Deputy Sheriff Pogorzielski argued in his motion to dismiss without contradiction thereafter by Plaintiff, appear to relate to the deputy sheriff as opposed to other defendant(s). (D.E. 21 at 3 n.3.) This claim as to other defendant(s), to the extent it is actually advanced, is not implicated by this opinion.

20

as this one—Plaintiff has failed to suggest or outline any basis for suspecting that the deputy sheriff acted in "wilfull and wanton" disregard of Illinois law. Therefore, Plaintiff's pendent state law claims must be dismissed as well.

## II. Plaintiff's Motion to Reconsider Is Respectfully Denied

### A. Relevant Background and Procedural History

Plaintiff failed to serve process on defendants James P. Delaney and M.P.S.I., Inc. within the 120-day window provided by the Federal Rules. *See* Fed. R. Civ. P. 4(m). On February 15, 2006, this Court granted Plaintiff a thirty-day extension of time to serve those defendants. (D.E. 13.) Plaintiff failed to do so.

On April 18, 2006, after the thirty-day extension of time had expired, the Court held a status conference at which one of the relevant items was dismissal without prejudice for failure to serve under Fed. R. Civ. P. 4. (D.E. 18.) Plaintiff failed to appear at that regularly scheduled status conference. (April 18, 2006, Tr. at 1.) At that time, the Court noted that the extension of time had expired without service of Mr. Delaney or M.P.S.I., Inc., and the Court accordingly dismissed those defendants without prejudice pursuant to Rule 4. (*Id.* at 2; *accord* D.E. 18.[7])

Plaintiff now requests that the Court reconsider that order, vacate the dismissal, and grant her an additional thirty days to effect service. (D.E. 22 ¶ 11.) For the reasons discussed below, Plaintiff's Motion to Reconsider is respectfully denied.

### B. Legal Standards and Analysis

---

[7] Both the text of Rule 4 and precedent make clear that a Rule 4 dismissal is one without prejudice. *See, e.g.*, Fed. R. Civ. P. 4(m) (court "shall dismiss the action without prejudice"); *Blaney v. West*, 209 F.3d 1027, 1031 (7th Cir. 2000). Plaintiff has never suggested that he somehow understood the Rule 4 dismissal to have been with prejudice, or to have been confused about the subject, and Plaintiff's counsel made clear at a subsequent status that he understood that Rule 4 dismissals are without prejudice. (*See* May 23, 2006 Tr. at 4.)

Rule 4(m) provides "that if the plaintiff shows good cause for the failure [to serve the defendant within 120 days of the filing of the complaint], the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also Coleman v. Milwaukee Board of School Directors*, 290 F.3d 932, 933 (7th Cir. 2002). "Good cause means a valid reason for delay, such as the defendant's evading service." *Id.*, 290 F.3d at 934 (citing *Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir. 1988)). The case law also allows the district court to extend the time for service where the plaintiff has committed "excusable neglect." *Id.*, 290 F.3d at 934. Where the grounds for extension is excusable neglect, the extension is permissive. The decision whether to grant an extension on grounds of excusable neglect is left to the informed discretion of the district court. *See, e.g., id.* (collecting cases).

In this case, as stated above, the Court already granted Plaintiff one extension of time. Moreover, Plaintiff has never argued *any* ground—either at the status conference following the expiration of the first extension of time, which status conference Plaintiff's counsel failed even to attend, or at any time thereafter—concerning "good cause" or "excusable neglect" with respect to the failure of service that would warrant granting a second extension of time. Like most district judges in this courthouse, the Court is generally quite willing to grant a first extension of time, even where no good cause is shown; concomitantly, second and successive extensions of time are much harder to secure. Plaintiff already was given one extension of time. Her counsel did not even appear at the status following the expiration of this first extension, and he still offers no reason whatsoever for why service was not effected during the 120-day period or during the first extension of time. Nor does he explain why service was not effected during the subsequent time period following the Rule 4(m) dismissal without prejudice and before the statute of limitations apparently ran. The motion to reconsider is accordingly unpersuasive.

In this regard, Plaintiff's motion to reconsider is a bare-bones recital of the claims' procedural history that cites only one case and makes no argument in support of granting its request for more time. (*See generally* D.E. 22.) Given the high standard for granting a motion to reconsider, Plaintiff would have to present some new law or evidence to merit a second look at this issue. *See, e.g., Bank of Waunakee*, 906 F.2d at 1191. Plaintiff has done neither.

To be clear, however, the denial of Plaintiff's reconsideration motion does not turn on any heightened standard applicable to such types of motions. Instead, Plaintiff has never even attempted to offer a concrete reason why service was not effected during the time period prescribed by Rule 4 or during the Court's first extension to that time, such that a second extension of time would be appropriate.

Plaintiff does argue in her motion that the dismissal was improper because the Court failed to provide her notice that it was considering a *sua sponte* dismissal. (D.E. 22 ¶ 5.) In support of this argument, Plaintiff cites only *Smith-Bey v. Cripe*, 852 F.2d 592, 593 (D.C. Cir. 1988). With all respect, *Smith-Bey* does not change the outcome here and, in fact, supports denying Plaintiff's reconsideration motion, not granting it. *Smith-Bey* addresses a failure to serve process under Fed. R. Civ. P. 4(j), the precursor to Rule 4(m). In *Smith-Bey*, a case that involved a *pro se* litigant, the district court dismissed the case after merely 120 days (*i.e.*, there had not already been one extension of time, thus making clear that a presumptive deadline had been extended) and the *pro se* plaintiff never attempted to file a reconsideration motion, in which the plaintiff could present any basis by which he could "show good cause why such service had not been made within the 120-day time period required under the federal rules." *Id.* at 594. *Smith-Bey* held that the facts that (1) "Smith-Bey did not move for reconsideration" and therefore "did not have any opportunity to show good cause"; and (2) never received any

23

extension of time in the first place, and therefore "was neither actually nor constructively on notice as to the impending sua sponte dismissal"—"combined with" the fact of "his [*i.e.*, Smith-Bey's] *pro se* status," collectively warranted the conclusion that the *sua sponte* dismissal by the district court after 120 days was improper. *Id.*

In the instant case, each of the factors underlying the *Smith-Bey* decision cuts the other way. First, as *Smith-Bey* noted, substantial federal appellate authority holds that a motion for reconsideration following a *sua sponte* dismissal for failure to serve satisfies any notice requirement under Rule 4 because such a motion provides an adequate opportunity to argue good cause for failure to serve or some other basis by which an extension of time would be justified. *See id.* This appellate authority includes a per curiam decision of the First Circuit in which then-Judge Stephen Breyer was a panel-member—*see Ruiz Varela v. Sanchez Velez*, 814 F.2d 821 (1st Cir. 1987) (per curiam)—which holds that a warning by the trial court prior to dismissal is not required, so long as it does not prejudice the plaintiff, and that the opportunity to present any arguments in support of the extension of time via a reconsideration motion gives the plaintiff a fair chance to seek the extension and thus eliminates any theoretical prejudice. *See id.* at 823 (collecting cases); *accord, e.g.*, *Whale v. United States*, 792 F.2d 951, 952 (9th Cir. 1986). Plaintiff has filed a reconsideration motion—which motion still fails to offer *any* substantive reason as to why "good cause" or "excusable neglect" or any other factor warrants a further discretionary extension of time, beyond the one already afforded. Second, Plaintiff in the instant case has, as explained, already received one extension of time from the presumptive deadline. Thus, to speak in the language of *Smith-Bey*, Plaintiff was certainly on actual and constructive notice of that deadline, by which her service was untimely at the expiration of the

first extension of time. Third, Plaintiff in the instant case is not proceeding *pro se*. She is, as explained, represented by counsel and has been throughout the history of the case.

As related above, Plaintiff failed to appear at the April 18 status hearing during which the claims were dismissed. Plaintiff appears to argue that, since counsel failed to appear, Plaintiff did not have notice of the dismissal. But counsel was surely on notice that allowing the first extension to expire without serving Defendants would likely lead to dismissal, in this Courtroom or in most in this courthouse, regardless of whether counsel appeared for the status hearing or not. Plaintiff's counsel offers no authority in support of the idea that failing to show up at the time the dismissal naturally would occur, as was the case here, should put the dilatory server at an advantage with respect to the outcome that presumptively would adhere—*i.e.*, a dismissal without prejudice under Rule 4 for failure to effect service during the 120-day period provided by Rule 4 or during a discretionary extension of time that already was granted.[8]

---

[8] As a textual matter, the Court notes that Rule 4(m) does not state that notice by the Court is required after there already has been one extension of time. Instead, the Rule states that the Court *sua sponte* may dismiss the action as to any unserved defendant(s) "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint." *Id.* Thus, as a textual matter, one could reasonably read the Rule as obviating the need for any express warning that dismissal might occur after the Plaintiff has already received an extension of time (here, 30 days) from the presumptive deadline. Moreover, and independently, as explained above, Plaintiff has never offered any reason why she should receive a second extension of time—whether on the basis of "good cause" or "excusable neglect" or otherwise. Thus, even if the issue were presented *de novo* today, on the basis of the arguments actually tendered, the Court would not find that a further discretionary extension was warranted. In addition, and again independently, this entire issue is largely academic, in that at the time the Court dismissed the two defendants pursuant to Rule 4 without prejudice, there still was approximately one month left in the statute of limitations period for the Section 1983 claims and Plaintiff's counsel therefore could easily have refiled and effected service if he had been diligent. With all respect, he was not; instead, he waited more than two months (during which time an intervening status hearing occurred (D.E. 19)) and until after the statute of limitations apparently lapsed on the Section 1983 claims before raising the Rule 4 issue again via the reconsideration motion. (D.E. 22.) At that intervening status hearing, Plaintiff's counsel confirmed that the dismissal under Rule 4(m) was without prejudice (May 23, 2006 Tr. at 4-5), and he expressed his

Finally, the Court notes that at the time it dismissed the relevant two defendants pursuant to Rule 4 without prejudice, the statute of limitations apparently had not run as against those defendants on the Section 1983 claims. (The statute of limitations for Section 1983 claims is two years—*see, e.g., Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006)—and it appears that the events in question here took place on or about May 12, 2004 (*see* D.E. 1 at 1); the order of dismissal was entered on April 18, 2006 (D.E. 18).) Precedent teaches that the fact that a statute of limitations has already run on an unserved complaint may militate in favor of granting an extension of time to serve, although that precedent also makes clear that such a discretionary extension of time is not required under such a circumstance. *See, e.g., Coleman*, 290 F.3d at 934; *Panaras v. Liquid Carbonic Industries Corp.*, 94 F.3d 338, 341 (7th Cir. 1996). Here, however, at the time the Court entered the dismissal order, under any view of things, the statute on the Section 1983 claims seemingly had not run. With all respect, had Plaintiff's counsel been diligent, the entire service/extension of time issue would have been mooted as to those claims by simply refiling and serving the two Rule 4 defendants. The period until May 12, 2006, seemingly would have been available, and the time period may have extended beyond that.[9]

---

belief (which may or may not have been correct) that the statute had not run as to the dismissed defendants as of May 23, 2006, the date of the status (*id.* at 3). Precedent teaches that "half-hearted efforts to serve a defendant will not excuse a plaintiff from adhering to the 120-day deadline." *Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir. 1988) (collecting cases). In this case, again with all respect, Plaintiff did even less than that, in that she offers no argument to suggest that she attempted, even half-heartedly, to serve the relevant defendants during the service period, or during the extension period, or during the period of time after the case was dismissed without prejudice (*i.e.*, on April 18, 2006) but before the statute of limitations period seemingly expired.

[9] At the May 23, 2006, status, Plaintiff's counsel represented that, "I don't think I have a statute of limitations problem yet," and he alluded to the possibility of "refiling the case as to

26

In summary, Plaintiff has shown no reason, either at the relevant time or at any point thereafter, why she merits a "good cause" or "excusable neglect" finding regarding her failure to serve the two Rule 4 defendants during the 120-day period provided by Rule 4 or during the extension granted thereafter. Nor has Plaintiff attempted to explain why she did not serve those defendants during the period of time after the Rule 4 dismissal and before the statute of limitations seemingly ran thereafter (or since if the statute has not yet run). Under such circumstances, the reconsideration motion is not persuasive, and it is respectfully denied.

## CONCLUSION

For the reasons given above, the Court grants Deputy Pogorzielski's motion to dismiss for failure to state a claim, and respectfully denies Plaintiff's motion to reconsider.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Date: 11/13/06

---

those defendants." (May 23, 2006, Tr. at 3.) Perhaps the limitations period had not run as of May 23, or perhaps somehow it still has not run (the Court need not resolve such issues); the salient point is that at the time of the Rule 4(m) dismissal on April 18, 2006, it appears clear that the statute of limitations had not run on at least the Section 1983 claims. Instead of refiling and serving anew, Plaintiff's counsel waited until the May 23, 2006, status conference even to raise the issue orally, and when the Court expressed a willingness to consider his request for a further extension if there was authority and good cause that could be shown in support of such a request, Plaintiff waited an additional month, or until June 23, 2006, even to file her cursory reconsideration motion, which was noticed for presentment on June 29, 2006. (D.E. 22, D.E. 23.)